UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL SLACK,

                Plaintiff,

v.

COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

17CV840

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 9 (plaintiff), 16 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the defendant Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

References noted as "[R. __]" are to the certified record of the administrative proceedings, filed with this Court (Docket No. 7).

The plaintiff ("Michael Slack" or "plaintiff") filed an application for disability insurance benefits on March 26, 2014. That application was denied initially. Plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated June 9, 2016, that the plaintiff was not disabled within the meaning of the Social

Security Act. The ALJ's decision became the final decision of the Commissioner on June 29, 2017, when the Appeals Council denied plaintiff's request for administrative review.

Plaintiff commenced this action on August 25, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 9, 16) and plaintiff did not file a reply. This case was scheduled for oral argument and a status conference on January 9, 2019 (Docket No. 19), but, due to the failure to enact appropriations, the proceedings were stayed (Docket No. 21; see Docket No. 20 (defendant's motion to adjourn); cf. Docket No. 22, Order (to reset argument upon restoration of funding). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 31-year-old with a limited education, did not have substantial gainful activity since March 26, 2014 [R. 24, 15]. The ALJ noted that plaintiff had a felony record and a poor work history [R. 17].

Plaintiff contends that he was disabled as of his onset date of September 30, 2012 [R. 15]. Plaintiff claims the following impairments deemed to be severe by the ALJ: shoulder disorder, learning disability, personality disorder, obesity, and GERD [R. 17-18].

## MEDICAL AND VOCATIONAL EVIDENCE

At issue here is plaintiff's claimed shoulder disorder. Plaintiff testified that he could not work due to shoulder pain from ripping his left shoulder rotator cuff on November 14, 2013 [R. 20, 270]. He said he takes hydrocodone and an anti-inflammatory medication and the medication relieved his pain during the day but he had to sleep with his arm overhead [R. 20]. The ALJ found that plaintiff's shoulder pain was controlled by medication during the day [R. 20]

and he had no restrictions on his ability to perform work-related activities, such as building kayaks and driving a tow truck [R. 18, 23]. Plaintiff testified that he took a double dose of medication when building kayaks [R. 21]. The ALJ noted that plaintiff did not require treatment for shoulder issues since January 2015 [R. 23]. After considering the evidence and plaintiff's testimony, the ALJ found that plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical record or other evidence [R. 23].

At issue also is plaintiff's mental health. At Step Two of the five-step analysis described below, the ALJ reviewed the "Paragraph B" criteria for the mental health Listings 12.04, 12.05, and 12.08. The ALJ found that Plaintiff had mild restriction in his Activities of Daily Living; plaintiff had moderate difficulties in Social Functioning and in Concentration, Persistence, or Pace; and plaintiff had no episodes of decompensation [R. 18-19], thus plaintiff did not meet those criteria. The ALJ then concluded that plaintiff also did not meet the criteria for "Paragraph C" or "Paragraph A" of Listing 12.05, since the ALJ found that plaintiff could care for his personal needs [R. 19].

The ALJ thus found that plaintiff had a residual functional capacity to perform light work with some limitations [R. 20, 24]. Specifically, the ALJ concluded that plaintiff could lift 20 pounds occasionally and 10 pounds frequently [R. 20]. The ALJ also found that plaintiff could occasionally climb ladders, ropes or scaffolds, frequently climb stairs or ramps, balance, stoop, kneel, crouch, or crawl [R. 20]. The ALJ would limit Plaintiff to performing simple, routine, repetitive tasks with no production rate pace or quota, limited to making simple work-related decisions [R. 20]. The ALJ also noted that plaintiff would be limited to tolerating few or

infrequent changes in a routine work setting, occasional interaction with co-workers and supervisors, and no interaction with the public [R. 20].

Having presented this residual functional capacity, the vocational expert opined that a claimant like plaintiff could perform jobs such as power screwdriver operator; burr grinder, optical; or small parts assembler (all light exertion work) [R. 24-25]. The ALJ then held that plaintiff was not disabled [R. 25].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience,

4

engage in any other kind of substantial gainful work which exists in the national economy . . . ."
42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

Thus, to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical

and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the denial of disability coverage. At Step Four of the five-step analysis, plaintiff contends that the ALJ's credibility assessment was based on a gross mischaracterization of the record (Docket No. 9, Pl. Memo. at 12-17). As for plaintiff's shoulder disorder, he contends that the ALJ misconstrued treatment records from Dr. David Stahl (id. at 13-14). The ALJ found that Dr. Stahl's treatment records did not support plaintiff's testimony because plaintiff did not have any treatment for shoulder pain since January 2015 [R. 21]. Plaintiff counters that he underwent physical therapy but there was no record of his progress (Docket No. 9, Pl. Memo. at 13; [R. 21]). The ALJ relied upon plaintiff's intention to return to towing [R. 21, 319, medical note, dated Aug. 14, 2014] but plaintiff argues that he never returned to that job and his statement of this intention said nothing about his ability to tow (Docket No. 9, Pl. Memo. at 13). Plaintiff argues that the ALJ relied upon his complaints to his mental health provider to conclude that

6

plaintiff's shoulder was not debilitating (Docket No. 9, Pl. Memo. at 13; [cf. R. 23]). Plaintiff concludes that the ALJ erred in not simply asking plaintiff about his lack of complaints about his shoulder (Docket No. 9, Pl. Memo. at 13).

Plaintiff also contends that the ALJ made his own inferences from plaintiff's criminal record and his instances of boredom without considering plaintiff's psychiatric symptoms (id. at 14-15; [R. 17, 22]). Plaintiff asserts that his boredom was a result of his psychiatric symptoms rather than laziness (Docket No. 9, Pl. Memo. at 14). He concludes that the ALJ did not make a true credibility determination (id. at 16).

Defendant Commissioner responds that the ALJ had sufficient evidence to support his credibility determination. Defendant argues that Dr. Stahl could be discredited because plaintiff did not seek treatment for his shoulder since January 2015 or mention his left shoulder in subsequent medical visits (No. 16, Def. Memo. at 11-12; [R. 21]). Plaintiff received what defendant terms conservative care, thus discounting plaintiff's contrary subjective complaints (Docket No. 16, Def. Memo. at 12). Defendant argues that the ALJ appropriately considered plaintiff's brief work in building kayaks and his driving a tow truck (despite the absence of evidence of income from the latter job) as examples of physically demanding jobs he performed that belie disability (id. at 14-15). Plaintiff's expressed intention to return to driving a tow truck could be considered despite plaintiff not doing this because it showed plaintiff's belief that he could return to work (id. at 15).

As for plaintiff's mental health treatment, defendant points out that plaintiff was prescribed Seroquel and that medication was working for plaintiff (Docket No. 16, Def. Memo. at 12; [R. 22, 300]). Previously, Dr. Tulio Ortega, plaintiff's physician, found that plaintiff had a

7

long history of depression, anxiety, and poor temper control but a clear-cut diagnosis was a puzzle [R. 300]. Plaintiff was prescribed other medication which did not have a benefit before being prescribed Seroquel [R. 300]. In April 2015, plaintiff sought (and obtained) from Dr. Ortega reduction of the dosage of his medication due to side effects on his ability to work, noting that plaintiff did not appear depressed, denied any anxiety, agitation or panic attacks [No. 16, at 13; R. 22, 352]. Two months later, plaintiff reported to Dr. Ortega that he worked full time without problems with temper, rage, or anger, and his mood swings apparently in check [No. 16, at 13; R. 22, 354]. Defendant argues that the ALJ considered this in finding that plaintiff could perform light work with mental limitations included in the RFC [No. 16, at 14; R. 22-23, 20]. Finally, defendant argues that plaintiff's poor work history could be considered to show that he had not engaged in substantial gainful activity before he alleged any disability [No. 16, at 16].

Reviewing the record here, this Court finds that the ALJ **properly assessed plaintiff's credibility**. Telling to this Court are plaintiff's physical activities in towing vehicles and working briefly in building kayaks during the alleged period of disability and the fact that plaintiff's mental impairments were controlled by medication (even after adjusting dosage to allow plaintiff to work without side effects). Plaintiff's motion on this basis is **denied**.

Plaintiff next argues that the ALJ did not adequately develop the record regarding medical opinions and evaluation (Docket No. 9, Pl. Memo. at 17-20). Plaintiff argues that the record is devoid of Dr. Ortega's assessment of plaintiff's psychiatric functional ability and the absence of a psychiatric consultative examination (id. at 18-19). Instead, plaintiff urges that the ALJ erroneously relied upon the state agency's brief assessment of plaintiff's mental capacity (id. at 19; [R. 23-24, 60-64]).

Defendant argues that the ALJ appropriately gave great weight to the state agency's evaluation, despite disagreeing with the assessment about plaintiff's learning disability (Docket No. 16, Def. Memo. at 19; [R. 23-24]). Defendant points out the ALJ's ultimate mental impairment findings were based upon the entire record (Docket No. 16, Def. Memo. at 19-20) and not merely on the allegedly stale state agency findings (id.). The ALJ also relied upon subsequent mental health records which contradicted state agency evaluator, Dr. Butensky, on other points of plaintiff's condition (id. at 20). Defendant counters that plaintiff had the burden of proving his disability at this step and the ALJ's duty to develop the record did not apply; plaintiff, rather, had the obligation to providing medical source opinion to establish disability and not the ALJ (id. at 20-21).

As for obtaining additional mental health evidence, during the hearing plaintiff's counsel sought updated records from Dr. Ortega's facility, Orleans County Mental Health [R. 33; see R. 229]. The record does not include this additional material, a request by plaintiff on appeal to the Appeals Council to add to the record, or indication of what Dr. Ortega would have found about plaintiff's mental functional capacity if inquired. Defendant is correct that at Steps Three and Four plaintiff bears the burden of establishing disability. Any omission in not seeking Dr. Ortega's functional assessment lies with plaintiff and not the ALJ. Thus, plaintiff's motion on this ground also is **denied**.

## CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 9) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 16) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed**, pursuant to sentence four of

9

42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).  The Clerk of the Court shall close this case.

    So Ordered.

                                              /s/ Hugh B. Scott
                                              Hon. Hugh B. Scott
                                        United States Magistrate Judge

Dated: Buffalo, New York
       January 10, 2019